584 S.E.2d 413

**Ruby FLATEAU and Herbert S. Fielding, Appellants,**

**v.**

**Robert M. HARRELSON, Oliver H. Willis, Stella G. Williams, E. Lynn W. Smith, and Earlene S. Gardner, Respondents.**

**No. 3652.**

Court of Appeals of South Carolina.

Heard May 13, 2003.

Decided June 16, 2003.

Rehearing Denied Aug. 22, 2003.

Coming B. Gibbs, Jr., and Jeffrey A. Barnwell, both of Charleston, for Appellants.

Kathryn Thomas and Christopher W. Johnson, both of Columbia, for Respondents.

ANDERSON, J:

Ruby Flateau and Herbert S. Fielding, employees of the South Carolina Commission for the Blind (Commission), appeal the circuit court's dismissal of their tort actions against the following members of the Commission's governing board: Robert M. Harrelson, Oliver H. Willis, Stella G. Williams, E. Lynn W. Smith, and Earlene S. Gardner (collectively, "the Board"). On appeal, Flateau and Fielding argue the court erred in finding: (1) the South Carolina Tort Claims Act (Act) provided the exclusive remedy for Flateau and Fielding; (2) the Act's two-year statute of limitations barred the actions; and (3) the Board's failure to substitute the Commission as a party precludes a finding that the causes of action of Flateau and Fielding fall within the Act's auspices. We affirm.

## FACTS/PROCEDURAL BACKGROUND

In May 1998, the Board called Flateau and Fielding to a hearing in the Commission's Board Room. Flateau and Fielding entered the room at 10:00 a.m. Flateau left at 2:30 p.m. to attend a scheduled medical appointment. Fielding remained in the room until 4:30 p.m. During the interim, they were not allowed to leave the room without a security escort, nor were they permitted unaccompanied access to their offices. Members of the media were present.

Flateau and Fielding filed separate complaints in April 2001. Their respective complaints identified each of them as "an employee of the South Carolina Commission for the Blind" at

all relevant times. The pleadings further stated that "[a]t the time of the incident ..., the Defendants were members of the Board of the South Carolina Commission for the Blind." In their complaints, Flateau and Fielding averred they "were commanded by Defendants to remain in the Board Room for the purposes of awaiting an interview by Defendants, who had entered upon an executive session." Flateau and Fielding alleged causes of action for outrage, invasion of privacy, and civil conspiracy.

The Board filed motions to dismiss the actions pursuant to Rule 12(b)(6), SCRCP. The Board argued: (1) Flateau and Fielding failed to assert in their pleadings that the Board's members acted outside the scope of their duties; (2) the Act provided the exclusive remedy for Flateau and Fielding; (3) the causes of action were barred by the Act's two-year statute of limitations; (4) the two-year statute of limitations applied "even if the complaint had alleged that the defendants acted outside the scope of their duties"; and (5) neither Flateau nor Fielding filed a verified claim that would extend the statute of limitations to three years. The court granted the motions to dismiss.

### ISSUES

I.   Did the circuit court err in finding the Act applied to the case at bar?

II.  Did the circuit court err in finding the Act's two-year statute of limitations barred the causes of action brought by Flateau and Fielding?

### STANDARD OF REVIEW

Under Rule 12(b)(6), SCRCP, a defendant may move to dismiss based on a failure to state facts sufficient to constitute a cause of action. *Baird v. Charleston County*, 333 S.C. 519, 511 S.E.2d 69 (1999); *Bergstrom v. Palmetto Health Alliance*, 352 S.C. 221, 573 S.E.2d 805 (Ct.App.2002). A trial judge in the civil setting may dismiss a claim when the defendant demonstrates the plaintiff has failed to state facts sufficient to constitute a cause of action in the pleadings filed with the court. *Williams v. Condon*, 347 S.C. 227, 553 S.E.2d 496 (Ct.App.2001). Generally, in considering a 12(b)(6) motion, the trial court must base its ruling solely upon allegations

set forth on the face of the complaint. *Stiles v. Onorato,* 318 S.C. 297, 457 S.E.2d 601 (1995); *Bergstrom,* 352 S.C. at 233, 573 S.E.2d at 811; *see also Brown v. Leverette,* 291 S.C. 364, 353 S.E.2d 697 (1987) (trial court must dispose of motion for failure to state cause of action based solely upon allegations set forth on face of complaint); *Williams,* 347 S.C. at 233, 553 S.E.2d at 499 (trial court's ruling on 12(b)(6) motion must be bottomed and premised solely upon allegations set forth by plaintiff).

A motion to dismiss under Rule 12(b)(6) should not be granted if facts alleged and inferences reasonably deducible therefrom would entitle the plaintiff to relief on any theory of the case. *See Gentry v. Yonce,* 337 S.C. 1, 522 S.E.2d 137 (1999); *Stiles,* 318 S.C. at 300, 457 S.E.2d at 602–03; *see also Baird,* 333 S.C. at 527, 511 S.E.2d at 73 (if the facts and inferences drawn from the facts alleged on the complaint would entitle the plaintiff to relief on any theory, then the grant of a motion to dismiss for failure to state a claim is improper); *McCormick v. England,* 328 S.C. 627, 494 S.E.2d 431 (Ct.App.1997) (motion to dismiss cannot be sustained if facts alleged in complaint and inferences reasonably deducible therefrom would entitle plaintiff to relief on any theory of the case). In deciding whether the trial court properly granted the motion to dismiss, this Court must consider whether the complaint, viewed in the light most favorable to the plaintiff, states any valid claim for relief. *See Gentry,* 337 S.C. at 5, 522 S.E.2d at 139; *see also Cowart v. Poore,* 337 S.C. 359, 523 S.E.2d 182 (Ct.App.1999) (looking at facts in light most favorable to plaintiff, and with all doubts resolved in his behalf, the court must consider whether the pleadings articulate any valid claim for relief).

The complaint should not be dismissed merely because the court doubts the plaintiff will prevail in the action. *Toussaint v. Ham,* 292 S.C. 415, 357 S.E.2d 8 (1987). The trial court's grant of a motion to dismiss will be sustained if the facts alleged in the complaint do not support relief under any theory of law. *Tatum v. Medical Univ. of South Carolina,* 346 S.C. 194, 552 S.E.2d 18 (2001); *see also Gray v. State Farm Auto Ins. Co.,* 327 S.C. 646, 491 S.E.2d 272 (Ct.App.1997) (motion must be granted if facts and inferences

reasonably deducible from them show that plaintiff could not prevail on any theory of the case).

▮▮▮ "Dismissal of an action pursuant to Rule 12(b)(6) is appealable." *Williams,* 347 at 233, 553 S.E.2d at 500. Upon review of a dismissal of an action pursuant to Rule 12(b)(6), the appellate court applies the same standard of review implemented by the trial court. *Id.*

## *LAW/ANALYSIS*
## I. TORT CLAIMS ACT

Flateau and Fielding contend that because they stated a valid claim of relief, the trial court's decision to dismiss their causes of action under the Act was erroneous. We disagree.

▮▮▮ The Tort Claims Act governs all tort claims against governmental entities and is the exclusive civil remedy available in an action against a governmental entity or its employees. *See Murphy v. Richland Mem'l Hosp.,* 317 S.C. 560, 455 S.E.2d 688 (1995); *Wells v. City of Lynchburg,* 331 S.C. 296, 501 S.E.2d 746 (Ct.App.1998). "The remedy provided by [the Tort Claims Act] is the exclusive civil remedy available *for any tort* committed by a governmental entity, its employees, or its agents except as provided in § 15–78–70(b)." S.C.Code Ann. § 15–78–20(b) (Supp.2002) (emphasis added). "[The Tort Claims Act] constitutes the exclusive remedy *for any tort* committed by an employee of a governmental entity." S.C.Code Ann. § 15–78–70(a) (Supp.2002) (emphasis added). According to the Act, "[n]otwithstanding any provision of law, this chapter, the 'South Carolina Tort Claims Act,' is the exclusive and sole remedy *for any tort* committed by an employee of a governmental entity while acting within the scope of the employee's official duty." S.C.Code Ann. § 15–78–200 (Supp.2002) (emphasis added).

Section 15–78–70(a) provides in part that "[a]n employee of a governmental entity who commits a tort while acting within the scope of his official duty is not liable therefor except as expressly provided for in subsection (b)." S.C.Code Ann. § 15–78–70(a) (Supp.2002). Subsection (b) declares: "Nothing in this chapter may be construed to give an employee of a governmental entity immunity from suit and liability if it is

proved that the employee's conduct was not within the scope of his official duties or that it constituted actual fraud, actual malice, intent to harm, or a crime involving moral turpitude." S.C.Code Ann. § 15–78–70(b) (Supp.2002).

The Act defines a "[g]overnmental entity" as "the State and its political subdivisions." S.C.Code Ann. § 15–78–30(d) (Supp.2002). The State "means the State of South Carolina" and includes its commissions. S.C.Code Ann. § 15–78–30(e) (Supp.2002). In the present case, the Act's definition of an "employee" refers to "any officer, employee, or agent of the State or its political subdivisions, including elected or appointed officials, law enforcement officers, and persons acting on behalf or in service of a governmental entity in the scope of official duty." S.C.Code Ann. § 15–78–30(c) (Supp.2002). " 'Scope of official duty' or 'scope of state employment' means (1) acting in and about the official business of a governmental entity and (2) performing official duties." S.C.Code Ann. § 15–78–30(i) (Supp.2002).

The Act is intended to cover those actions committed by an employee within the scope of the employee's official duty. "The provisions of [the Act] establishing limitations on and exemptions to the liability of the State, its political subdivisions, and employees, while acting within the scope of official duty, must be liberally construed in favor of limiting the liability of the State." S.C.Code Ann. § 15–78–20(f) (Supp. 2002); *see also Wade v. Berkeley County,* 330 S.C. 311, 498 S.E.2d 684 (Ct.App.1998) (noting that § 15–78–20(f) limits coverage to employees acting within the scope of official duty).

Here, it is undisputed that the Commission is a "governmental entity" within the meaning of the Act. Furthermore, despite the contention in the brief of Flateau and Fielding, nowhere in their complaints do Flateau and Fielding allege that the Board members' actions were outside the scope of their official duty. On the contrary, the complaints specifically aver: (1) "[a]t the time of the incident . . ., the Defendants were members of the Board of the South Carolina Commission for the Blind"; (2) Flateau and Fielding were, "at the time of the incident set forth [in the complaint,] . . . employee[s] of the South Carolina Commission for the Blind"; (3) "[a]t 10:00 o'clock a.m. on or about May 1, 1998 the Defendants did

command [Flateau and Fielding] and other employees to attend a hearing in the Board Room of the offices of the South Carolina Commission for the Blind"; (4) "[u]pon arriving at the Board Room, [Flateau and Fielding] and other employees were commanded by Defendants to remain in the Board Room for the purposes of awaiting an interview by Defendants, who had entered upon an executive session in an ante-room in the building"; (5) the incident occurred during regular business hours and in the Commission's boardroom; (6) the Board "commanded" Flateau and Fielding to behave in a certain manner, and they complied with the Board's requests; and (7) the "Defendants' command that [Flateau and Fielding] be restrained in the Board Room of the [Commission] without leave to depart was made by the combination of them voting for those restrictions upon [Flateau's and Fielding's] personal freedom and access to movement."

The complaints assert tort claims against Commission board members who acted on behalf of the Commission in commanding Commission employees, including Flateau and Fielding, to attend a hearing for the purpose of being interviewed by the Board. The pleadings clearly and unequivocally allege that the Board members were meeting and acting together as the South Carolina Commission for the Blind, discussing matters in executive session, and voting in their capacity as Commissioners to take the actions in question-all official duties and actions that are about the official business of the Commission, which is a public body established by the General Assembly. *See* S.C.Code Ann. § 43–25–10 (1985) (creating the South Carolina Commission for the Blind; stating that chairman of Commission may call meeting whenever he deems it necessary); S.C.Code Ann. § 30–4–20 (1991) (defining "public body" to include state commissions). Requiring Flateau and Fielding to attend a hearing and holding them there, as Flateau and Fielding maintain in their complaints, may be argued to go beyond the *authority* of the Commission, but it does not bring the Commissioners' actions outside the scope of their official duty. *See Crittenden v. Thompson–Walker Co.,* 288 S.C. 112, 341 S.E.2d 385 (Ct.App.1986) (distinguishing scope of servant's employment from scope of servant's authority and holding acts outside servant's authority are still within his scope of duty if done in furtherance of master's business).

The complaints of Flateau and Fielding allege torts committed by the Board members while acting within the scope of their official duty. The Tort Claims Act explicitly provides the sole and exclusive remedy for torts committed by employees of a governmental entity. We find the claims of Flateau and Fielding are subject to the Tort Claims Act.

Because we have concluded that the causes of action alleged by Flateau and Fielding against the Board members constituted conduct within the scope of the Board members' official duty, there can be no liability of individual members of the South Carolina Commission for the Blind. The statutory dialectic reveals that a governmental employee acting within the scope of official duty is exempt from personal liability.

The contentions of Flateau and Fielding fly in the face of logical argumentation in that the efficacy of the Tort Claims Act is protection of governmental employees acting in the scope of official duties. The remedy mandated in the Act is legal action initiated against the governmental entity rather than the individual governmental employee.

Flateau and Fielding maintain that the failure by the Board members to substitute the Commission's name for their names as a party defendant pursuant to S.C.Code Ann. § 15–78–70(c) removes their litigation from the auspices of the Tort Claims Act. We find this argument unavailing.

Section 15–78–70(c) provides in pertinent part:

[A] person, when bringing an action against a governmental entity under the provisions of this chapter, shall name as a party defendant only the agency or political subdivision for which the employee was acting and is not required to name the employee individually, unless the agency or political subdivision for which the employee was acting cannot be determined at the time the action is instituted. In the event that the employee is individually named, the agency or political subdivision for which the employee was acting must be substituted as the party defendant.

S.C.Code Ann. § 15–78–70(c) (Supp.2002). "When a plaintiff claims an employee of a state agency acted negligently in the performance of his job, the South Carolina Tort Claims Act requires a plaintiff to sue the agency for which an employee

works, rather than suing the employee directly." *Faile v. South Carolina Dep't of Juvenile Justice,* 350 S.C. 315, 321 n. 1, 566 S.E.2d 536, 539 n. 1 (2002) (citing S.C.Code Ann. § 15–78–70(c)). This language places no burden on the employee to substitute as a party defendant the state agency for which he or she is employed.

Concomitantly, in viewing these facts in the light most favorable to each plaintiff, and resolving all doubts in their behalf, we find that the Act provided the exclusive remedy for the conduct alleged by Flateau and Fielding.

## II. STATUTE OF LIMITATIONS

Flateau and Fielding argue that the Act's two-year statute of limitations should not bar their causes of action because they did not bring the actions pursuant to the Act. Flateau and Fielding claim the gravamen of their position is that the actions were not brought pursuant to the Tort Claims Act; instead, the suits allege common law causes of action for outrage, invasion of privacy, and civil conspiracy against individual defendants.

■ Section 15–78–110 of the Act provides a two-year statute of limitations for most actions:

Except as provided for in Section 15–3–40, any action brought pursuant to this chapter is forever barred unless an action is commenced within two years after the date the loss was or should have been discovered; provided, that if the claimant first filed a claim pursuant to this chapter then the action for damages based upon the same occurrence is forever barred unless the action is commenced within three years of the date the loss was or should have been discovered.

S.C.Code Ann. § 15–78–110 (Supp.2002). A three-year statute of limitations is available to a party who files a "verified claim." *See* S.C.Code Ann. § 15–78–80 (Supp.2002); *see also Joubert v. South Carolina Dep't of Soc. Servs.,* 341 S.C. 176, 534 S.E.2d 1 (Ct.App.2000) (if plaintiff files statutorily-defined claim within one year of loss or injury, statute of limitations is extended to three years). Section 15–78–80 expressly requires the party to file a verified claim in order to benefit from the three-year limitations period. *Joubert,* 341 S.C. at 186,

534 S.E.2d at 6. In order to trigger the three-year statute of limitations under § 15–78–110, a party must follow the procedure outlined in § 15–78–80. *Id.* at 187, 534 S.E.2d at 6.

The Tort Claims Act controls the instant case. The record contains no evidence that Flateau or Fielding filed a verified claim. Accordingly, the three-year statute of limitations does not apply. Rather, the two-year statute of limitations is applicable.

South Carolina Code Ann. § 15–78–70(b) articulates: "Nothing in this chapter may be construed to give an employee of a governmental entity immunity from suit and liability if it is proved that the employee's conduct was not within the scope of his official duties or that it constituted actual fraud, actual malice, intent to harm, or a crime involving moral turpitude." S.C.Code Ann. § 15–78–70(b) (Supp.2002). This statutory provision lifts the immunity normally enjoyed by governmental employees if they act outside the scope of their employment or their actions constitute fraud, malice, an intent to harm, or a crime of moral turpitude. Absolutely nothing in subsection (b) references a limitations period and, as part of the general Tort Claims Act statutory scheme, it is subject to the Act's statute of limitations as prescribed in S.C.Code Ann. § 15–78–110.

The incident occurred in May 1998. Flateau and Fielding filed their actions in April 2001, nearly three years later. Thus, the circuit court did not err in finding the Act's two-year statute of limitations barred the causes of action asserted by Flateau and Fielding.

### *CONCLUSION*

We hold the complaints of Flateau and Fielding allege torts committed by the Board members while acting within the scope of their official duty. The Tort Claims Act provides the exclusive remedy for torts committed by an employee of a governmental entity while acting within the scope of the employee's official duty. *See* S.C.Code Ann. § 15–78–200 (Supp.2002). Thus, the claims of Flateau and Fielding are governed by the Tort Claims Act. Further, § 15–78–70(c) placed no burden on the Board members to substitute the Commission's name for their names as a party defendant.

We rule the two-year statute of limitations applies even if the Board members acted outside the scope of their official duties or if their actions constituted fraud, actual malice, intent to cause harm, or a crime involving moral turpitude.

The order of the circuit court dismissing the actions filed by Flateau and Fielding is

**AFFIRMED.**

CURETON and HUFF, JJ., concur.